Kristephor E. MATOS, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. 1:01 CV 2770.

United States District Court,
N.D. Ohio,
Eastern Division.

March 2, 2004.

Marcia W. Margolius, Brown & Margolius, Cleveland, OH, for Plaintiff.·

Lynne H. Buck, Office of the U.S. Attorney, Cleveland, OH, Suzanne E. Duman, Social Security Administration, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

BAUGHMAN, United States Magistrate Judge.

### Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Kristephor E. Matos, for children's supplemental security income. The parties have consented to the jurisdiction of the Magistrate Judge.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Matos had severe impairments consisting of aphokic glaucoma and status post bilateral lensectomy for cataracts.[1] The ALJ determined, however, that Matos did not have an impairment or combination of impairments that met, equaled, or functionally equaled any impairment listed in Appendix 1.[2] He concluded, therefore, that Matos was not under a disability.[3]

Matos has challenged the decision of the Commissioner on the ground that substantial evidence in the record does not support the ALJ's finding that his impairments did not functionally equal the requirements of a listing.

The Court concludes that the ALJ's finding on functional equivalency does not have the support of substantial evidence in the administrative record. The decision of the Commissioner to deny children's sup-

---

1. Transcript ("Tr.") at 16.

2. *Id.*

3. *Id.* at 17.

plemental security income must, therefore, be reversed and the case remanded for further proceedings.

### Analysis

#### 1. Functional equivalency for children's supplemental security income claims

Functional equivalency to a listing for purposes of a child's claim for supplemental security income is governed by 20 C.F.R. § 416.926a. Under the regulation, for a child between 6 and 12 years of age, the inquiry is whether the impairment imposes an extreme or marked limitation in connection with six domains—acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for one's self, and health and physical well-being.[4] If a claimant has an extreme limitation in one of these domains or a marked limitation in two domains, he or she is considered functionally equivalent to a listing and, therefore, disabled.[5]

The regulations provide that the Commissioner will consider as evidence of limitations and restrictions the assessments of treating and other medical sources, information from parents and teachers, and assessments made after consultative examinations.[6] The regulations also contain guidelines for determining the extent of a claimant's limitation within each of the domains. Those guidelines will be discussed below as they relate to this case.

#### 2. Substantial evidence does not support the ALJ's finding that Matos's

impairments are not functionally equivalent to a listing.

#### A. Introduction

■ At the time of the ALJ's decision, Matos was 10 years old.[7] For purposes of the applicable regulations, therefore, Matos fell within the category of school-aged child age 6 to attainment of age 12.

The ALJ found that Matos had a marked limitation in the "moving about and manipulating objects" domain.[8] He found no limitation in the "caring for oneself" domain.[9] In the other four domains, he found Matos's limitations less than marked.[10]

Matos challenges the findings with respect to two of the domains—attending to and completing tasks and interacting and relating with others. He argues that substantial evidence in the record supports at least a marked limitation in each of these domains.

As a general observation, this is a difficult case because the evidence supports two very different portraits of this child. On one hand, two consulting professionals—Jung K. Lee, Ph.D., a clinical psychologist, and Donald S. Leventhal, Ph.D., also a psychologist—concluded that Matos had no serious impairment.[11] On the other hand, a number of reports prepared by Matos's teachers detail significant problems with task completion and relationships with others.[12]

■ In the usual case, where the record contains substantial evidence supporting the ALJ's findings but also contains substantial evidence rebutting those findings, the Court must affirm the decision of the Commissioner.[13] In this case, however,

4. 20 C.F.R. § 416.926a(b)(1).

5. 20 C.F.R. § 416.926a(d).

6. 20 C.F.R. § 416.926a(b)(3).

7. Tr. at 16.

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.* at 382 (Dr. Lee), 405 (Dr. Leventhal).

12. *E.g., id.* at 94, 109, 431–55.

13. *Buxton v. Halter,* 246 F.3d 762 (6th Cir. 2001).

the proper decision is made difficult by the ALJ's failure to fully discuss the highly relevant evidence and to clearly identify what weight he gave to the conflicting evidence. Although the conclusions produced by a consultative examination are certainly probative, they necessarily represent a limited evaluation of how a claimant functions in the real world given the short duration of the evaluation and the isolated context in which it is conducted. The observations of those who interact on a day-to-day basis with the claimant, particularly in the educational setting, necessarily provide valuable insight into the claimant's capabilities and limitations.

Where, as here, the consultative examiners and the educational professionals provide contrary evidence, it is incumbent, given the nature of the inquiry required by the regulations, that the ALJ discuss the evidence in some detail and articulate how he has resolved the conflicts. As explained below, the ALJ in this case failed to provide adequate articulation in support of his findings in light of the evidence in the record.

### B. The "attending to and completing tasks" domain

The ALJ found that Matos had a less than marked limitation in the "attending to and completing tasks" domain.[14] In making this finding, the ALJ noted that "[s]everal of his teachers have indicated that his attention span is shorter than average and that he will often not complete school assignments without close supervision."[15]

He determined that this evidence was not conclusive because "there is no evidence that he has difficulty initiating, sustaining and completing activities that he enjoys, such as biking, roller blading and playing video games."[16]

The ALJ does not specifically discuss the assessments of the two consulting psychologists. Nor does he state what weight he gave to those assessments. Nevertheless, both psychologists make comments relating to this domain. Dr. Lee observed that Matos's attention, concentration, persistence, and pace were "consistent."[17] He concluded that Matos had no diagnosable disability in addition to his visual impairment.[18] Dr. Leventhal concluded that Matos had no impairment in concentration, persistence, or pace.[19]

Matos's teachers made detailed written observations relevant to this domain. Stephanie Eagleton, his second grade teacher, documented substantial problems with attending to and completing tasks.

- "Kristephor has difficulty focusing on the task assigned."[20]
- "He has not demonstrated the ability to follow directions that have more than one step."[21]
- "Kris has difficulty focusing. He strays from task at hand & doesn't contribute to group work activities."[22]
- "Constant reminders to focus and complete assignments"[23]
- "Kris rarely to never finishes assignments in the normal allotted time."[24]

14. Tr. at 16.

15. *Id.* at 15.

16. *Id.*

17. *Id.* at 381.

18. *Id.* at 382.

19. *Id.* at 405.

20. *Id.* at 94.

21. *Id.*

22. *Id.* at 95.

23. *Id.* at 96.

24. *Id.*

- "Lack of focus—frequent repetition [sic] of directions is necessary."[25]

The Multifactored Evaluation Team Report from the Shaker Heights City Schools done in January of 1999 reported that Matos could not concentrate, could not pay attention for long, had difficulty following directions, and failed to carry out assigned tasks.[26]

Nancy Schubert, Matos's fourth grade teacher, stated in a school activities questionnaire that he had a much shorter attention span and concentration than his classmates, that he was much less able to follow instructions and work independently of teacher supervision, and very much less able to understand and complete assignments on time.[27] She also observed that he did not take responsibility for his assignments.[28]

The benchmarks set out in the regulations for this domain are closely tied to the claimant's ability to function in the school environment. For school-aged children ages 6 through 12, the regulations describe multiple indicators for adequate functioning:

When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.[29]

The regulations go on to give the following examples of limitations considered in this domain.

(i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.

(ii) You are slow to focus on, or fail to complete activities of interest to you, *e.g.*, games or art projects.

(iii) You repeatedly become side-tracked from your activities or you frequently interrupt others.

(iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.

(v) You require extra supervision to keep you engaged in an activity.[30]

Given the evidence in the record relating to this domain and the analytical framework for assessing limitations in this domain provided by the regulations, the ALJ's articulation of the reasons for finding less than marked limitation in this domain is woefully inadequate. He did not specifically discuss the assessments of the consulting psychologists or indicate what weight, if any, he gave to those assessments. Although he did acknowledge in a cursory way some of the observations of Matos's teachers, he did not comment upon most of the observations and did not state the weight he gave thereto. His

---

25. *Id.*

26. *Id.* at 109.

27. *Id.* at 445.

28. *Id.* at 446.

29. 20 C.F.R. § 416.926a(b)(1)(iv).

30. 20 C.F.R. § 416.926a(b)(3)(i-v).

conclusion that Matos's participation in recreational activities such as biking, roller blading, and video games evidenced a less than marked impairment does not constitute substantial evidence in support of his finding. Although the record indicates that Matos participated in these activities, there is nothing in the record documenting the amount of time that this child spent on these activities or if, indeed, he devoted more attention and concentration to them than to his schoolwork. This case must be remanded for reconsideration of the extent of the limitation under this domain and for proper articulation of the reasons in support of the ALJ's finding.

### C. The "interacting and relating with others" domain

The same problems described above with respect to the "attending to and completing tasks domain" exist for the "interacting and relating with others" domain.

The ALJ supports his finding of a less than marked impairment in this domain in one sentence: "The evidence indicates that the child has some friends in school and relates well to his family members, but that he gets into arguments with some of the other children and has a history of tattling and interrupting others."[31] This statement oversimplifies a complex factual record and does not provide substantial evidence in support of the finding.

As previously stated, Drs. Lee and Leventhal found no impairment in this domain.[32] Matos's teachers, however, provided extensive written comments doc-

umenting his difficulties interacting and relating with his classmates.[33]

For this domain, the regulations also set out indicators for adequate functioning[34] and provide examples of limitations to be considered in the domain.[35] The ALJ's articulation in support of his finding does not adequately address the evidence of record relevant to this domain or analyze the weight to be given to that evidence in light of the analytical framework set out in the regulations. On remand, the ALJ should reconsider his findings with respect to this domain and properly articulate his reasons in support of that finding.

### Conclusion

Based on the foregoing, the Court concludes that the ALJ's decision to deny Matos children's supplemental security income does not have the support of substantial evidence. Therefore, the ALJ's decision is reversed and remanded for further proceedings.

On remand, the ALJ must reconsider the findings with respect to the "attending to and completing tasks" and "interacting and relating with others" domains, weighing the extensive evidence in the record relating thereto, and properly articulate the reasons in support of the findings as to each domain.

IT IS SO ORDERED.

---

**31.** *Id.* at 15.

**32.** *Id.* at 382, 405.

**33.** *Id.* at 94–96 (Ms. Eagleton); 109 (Multifactored Evaluation Team Report); 445–47 (Ms. Schubert); 449 (Ms. Bonnie Jasiunas, school psychologist); 452 (Ms. Denice Benton, spe-

cial education tutor/intervention specialist); and 454 (Mr. Ken Kangas, physical education teacher).

**34.** 20 C.F.R. § 416.926a(i)(2)(iv).

**35.** 20 C.F.R. § 416.926a(i)(3)(i-vi).